McKinney J.,
delivered the opinion of the court.
This is an action of assumpsit brought upon a promissory note for $53 00, by the defendant in error against the plaintiff in error, in the circuit court of Davidson. The plaintiff below recovered judgment for the amount of the note and interest, and the case is brought here by an appeal in error.
The note sued on was made by one L. H. Huddleston, who is not a party to this suit, payable to Brockway or order, at four months, dated 10th October, 1848 ; and at the time of -the making thereof was endorsed in blank by Com- *356 partee, the plaintiff in error. The declaration is rather anom-» alous; it contains several counts, charging the defendant, in different [counts, as^a joint maker ; as sole maker; as indor-ser, in general terms ; and as indorser in blank of said note, “intending thereby to become bound to said plaintiff for the payment of said note when the same should fall due.”
It appears that the note was given for a suit of clothes, purchased by Huddleston from Brockway. The former was a non-resident; and Brockway being unacquainted with him, Comparree agreed to indorse said note, for the purpose of giving it credit; or in the language of the witness, he agreed to indorse it as Huddleston’s accommodation indorser, for Brock-way’s benefit. Witness also stated that it was entirely on the faith of Oomparree’s indorsement that Brockway sold the suit of clothes to Huddleston.
The witness was asked whether said Comparree had not stated to witness, “that the note had been drawn wrong, and should have been made payable to him, Comparree, instead of Brockway, so as to make Comparree the first indorser.” To Which he answered, “I am not positive that Comparree said to me, whether the note had been drawn wrong, or not; but am under the impression that he did.”
It further appears, that after said note was delivered to Brockway, with Comparree’s name on the back thereof, he, Brockway, placed his own name upon the paper, as first in-dorser, and in this condition the note was regularly negotiated to one James McGinnis. After the note fell due, McGinnis sued Brockway alone thereon, and recovered. And thereupon the present suit was commenced. It was admitted on the trial, that above the blank indorsement of the plaintiff in error, the counsel for the plaintiff below had written the following, namely, “For value received, I promise the payment of this note to R. H. Brockway, this October 10th, 1848.
R. J. CoMPARKEIS.”
*357 This indorsement was filled up in this form, without any Other evidence, or authority, than the supposed intention of the parties, arising out of the facts detailed by the witness, above stated.
The court instructed the jury, “that the holder of a note has a right to write over a blank indorsement the real contract of the parties. That the jury would endeavor to ascertain from the evidence, what was the contract of the parties, was it the intention that the indorsor should be bound as absolute promissor, or as guarantor, or simply as indorser? That the writing over the defendant’s name being, in effect, an absolute promise, it was necessary to the plaintiff's recovery that the jury should believe such was the contract between the parties.”
Upon the foregoing facts, we think the judgment manifestly erroneous for various reasons.
1st. Suppose it to have been agreed, previous to the execution of the note, that it should be made payable to Com-parree, so as thereby to make him the first indorser, and that either by mistake or fraud it was not so made, but, on the contrary, was made payable to Brockway ; could the latter, occupying-, as he does, the attitude of plaintiff in the present casej avail himself of such fraud or mistake in a court of law? Surely not. This point is expressly decided in Wood vs. Goodrich, 9 Yerg. 267. In that case it is held that, “on the part of him who sets up a deed,” (and the principle applies equally to a promissory note,) “and seeks to give it effect in a court of law, such court cannot, upon his averment of fraud or mistake, correct the deed, and give to it effect as corrected.” He must resort to a court of chancery in such case to obtain relief. Such being the established principle of law, the parol evidence on this point, however feeble and inconclusive of the fact sought to be established, was irrelevant, and in admitting it, after being objected to, the court erred.
*358 2d. The matter of mistake or fraud, in the execution of the note, out of the way, the case depends entirely upon the legal effect of Comparree’s blank endorsment. And the question is, was any other contract or liability created, on his part, than that ordinarily implied by law from the fact of his having placed his name upon a negotiable note, for the purpose of giving it credit? It matters not under what impressions the parties may have acted, with reference to the nature and extent of the legal obligation imposed upon Com-parree by his indorsement; their mistake of law, in -this respect, cannot effect or change the complexion of the case.
It is not necessary that we should enter into any discussion of the well settled distinction between the effect of an in-dorsement in blank on a negotiable note, and a note not negotiable. In respect to paper not negotiable by the law merchant, it is held, that if a third person place his name on the back of a note at the time it was made, he may be held liable as an original maker, or guarantor, according to the cir ■ cumstances of the case, and the understanding of the parties. Story on promissory notes, Sec. 473-475, and notes. The reason appears to be, that as such note is not negotiable according to mercantile usage, the person so indorsing in blank, cannot be regarded as an indorser, or charged as such; but having put his name on the paper to give it credit, or add to its ■ security, he will bo held responsible in a different form, and treated as an original promissor or guarantor. Thus far, most of the American cases concur : but as regards negotiable mercantile paper, there is not the same concurrence of judicial opinion. There are cases which decide that the principle just stated as applicable to paper not negotiable, applies equally to regular negotiable papersuch at least is the conclusion which they tend to establish. We think the law is-otherwise clearly settled. The legal effect of an in-dorsement in blank, with reference to commercial paper, and *359 the implied contract thereby created between the parties, have been long and well understood. The law implies full authority to the indorsee, or other holder of the note, to fill up the blank over the name of the indorser, and to make it payable either to himself or to a third person. Such indorsement, in legal contemplation, amounts to a contract on the part of the indorser with the indorsee or holder — that if, upon being duly presented, the note is not paid by the maker, he, the indorser, upon due notice of its dishonor, will pay the same to the indorsee or other holder. But although the holder may fill up the blank indorsement, he may not superadd any words whatever, which will enlarge or change the liability, created by law, unless expressly authorized by the agreement of the parties under which the indorsement was made. Story on promissory notes, sec.-138. It can be no sufficient reason for imposing on the indorser a different liability from that which his contract imports, that he was privy to the consideration of the note, or that he knew the use which was to be made of it, or that he put his name upon it for the purpose of giving credit to the maker; for within this jnecise category falls the case of almost every accommodation indorser. If this were the law, why, without the necessity of demand or notice, might not the collateral liability of an indorser be, in very many cases, at once converted into an original liability?
Nor is the argument tenable, that the plaintiff in error, in the present case, should be held liable as an original maker, because he is not chargable, in law, as indorser. In the first place: If the only legal inference deducible from the fact of his having placed his name upon the note be, that it was intended thereby to give the maker credit by making himself liable as second indorser — and such, we think, is the only legitimate inference that can be drawn — we are at a loss to know upon what prineiple of mercantile laiv he could be held *360 liable in a different form, even admitting that his liability could not be enforced in the mode contemplated by the parties at the time of the indorsement. The liability of an in-dorser, of negotiable paper, depends upon strict law, and cannot be enlarged or varied by mere intendment or construction.
But, in the next place, we think the assumption, that the plaintiff in error could not be charged as indorser, is a mistaken one. It is true, that, not being payee of the note, it was not negotiable by his indorsement. But, then, all that was necessary to make it negotiable, and to make him chargable as second indorser, was that the name of the defendant in error should be placed on the note as first indorser. This in fact was done. And it was the fault of the defendant in error that he did not protect himself from liability on his indorsement. In negotiating the note, he might have stipulated against personal liability, or required that the second indorser should be first proceeded against. It is sufficient for the decision of this case, that, in this mode, the. plaintiff in error might have been charged as indorser, without suggesting others in which, possibly, he might have been held responsible in that character. See 3. Hill’s N. Y. Rep. 234-235. 4. Term Rep. 470-471.
There is no question but that an indorser in blank may, by his agreement, enlarge or vary the liability created by law. As in the case of an indorsement in full, it may be general, or restrictive, qualified, conditional or absolute. Nor is there any doubt as to the right of the holder to fill up the blank indorsement in conformity to the agreement of the parties; and such agreement is to be interpreted so as to carry into effect their true intentions ; neither is there any doubt that, if the indorsement remain in blank, or only partially filled up, the holder may, on the trial, show by parol evidence the nature and extent of the undertaking of the indorser. All this *361 is well established. We go no further than to hold that, a blank indorsement, in a case like the present, creates no other liability than that of an ordinary commercial indorsement; and that the indorser (in the absence of countervailing proof) cannot be held bound in any other or different form.
It follows, therefore, that the filling up of the blank indorsement, in the form presented in this record, was unauthorized; and that there is no evidence in the case to support the verdict, or judgment, on either count of the declaration.
Judgment reversed.